IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| CHARLES EDWARD USERY, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 6:15-CV-0049-BL |
| | § | |
| NANCY A. BERRYHILL,[1] | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U. S. C. § 405(g), Plaintiff seeks judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[2] *See* Compl. (doc. 1). The Commissioner has filed an answer, *see* Def.'s Answer (doc. 13), and a certified copy of the transcript of the administrative proceedings, *see* SSA Admin. R. [hereinafter "R."] (doc. 15), including the hearing before the Administrative Law Judge ("ALJ"). The parties have briefed the issues. *See* Pl.'s Br. (doc. 19); Def.'s Resp. Br. (doc. 20). The United States District Judge reassigned the case to the undersigned subject to the consent of the parties. *See* Order (doc. 4). Because the parties have consented to proceed before a Magistrate Judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment. *See* Consents to Proceed Before a United States Magistrate Judge (docs. 16, 18). After considering the pleadings, briefs, admin-

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

[2] Title XVI governs supplemental security income for the aged, blind, and disabled. *See* 42 U.S.C. §§ 1381-1383. Final determinations under Title XVI are subject to the same judicial review as provided in § 405(g). *See* 42 U.S.C. § 1383(c)(3). The Court will often refer to Plaintiff as Claimant, a designation used in social security cases.

istrative record, and applicable law, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.

## I. BACKGROUND

Plaintiff initially claimed disability due to post-traumatic stress disorder ("PTSD"), anxiety, and an arm injury. R. 144. He protectively filed an application for SSI on March 6, 2012, alleging disability beginning August 8, 2011. R. 128, 144. The Commissioner denied the application initially and on reconsideration. R. 47-48. On November 19, 2013, Administrative Law Judge ("ALJ") William Helsper held a hearing on Plaintiff's claims. *See* R. 31-45. Through his representative at the hearing before the ALJ, Plaintiff amended his alleged onset date to July 4, 2013, based upon a metastatic disease. R. 32.

On February 12, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled and was capable of performing work that exists in significant numbers in the national economy. R. 12-23. Applying the sequential, five-step analysis set out in the regulations (20 C.F.R. § 416.920(a)(4)) the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. R. 14. The ALJ next determined that Plaintiff had "the following severe impairments: diabetes, hepatitis C, arthritis, degenerative disc disease, hypertension, left arm pain status post injury, soft tissue sarcoma, polysubstance abuse, in remission, posttraumatic stress disorder, [and] obsessive compulsive disorder." *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of any impairment in the listings.[3] R. 14-17.

---

[3]Section 416.925 explain the purpose and use of the listings of impairments.

2

The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC")[4] to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that he was limited to simple, non-complex tasks.[5] R. 17-21. Based upon the RFC determination and testimony from a vocational expert ("VE"), the ALJ concluded that Plaintiff could not perform his past relevant work, but could perform jobs that exist in significant numbers in the national economy. R. 21-22. At Step 5 of the evaluative sequence, the ALJ thus found that Plaintiff was not disabled within the meaning of the Social Security Act since March 6, 2012. R. 23.

On June 1, 2015, the Appeals Council found no reason to review the ALJ decision and thus denied Plaintiff's request for review. R. 1. The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

Plaintiff commenced this social security appeal on November 4, 2015. *See* Compl. In the

---

[4]Section 416.945(a)(1) explains that a claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. 20 C.F.R. § 416.946(c). However, that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 416.945(a)(3).

[5]The applicable regulation addresses physical exertion requirements and explains:
Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
20 C.F.R. § 416.967(a). To determine whether an individual has the ability to perform the full range of sedentary work from an exertional standpoint, Program Policy Statement (PPS) 101 elaborates:
"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.
Titles II & XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS-101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

3

sole issue presented, he argues that the ALJ improperly considered opinions of his treating physician. *See* Pl.'s Br. at 1-13.

## II. LEGAL STANDARD

In general,[6] a person is disabled within the meaning of the Social Security Act, when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)); *accord* 20 C.F.R. § 416.972(a)-(b). To evaluate a disability claim, the Commissioner employs the previously mentioned

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the Commissioner determines that the claimant is or is "not disabled, the inquiry is terminated." *Id.* at 448. The Commissioner must assess the claimant's RFC before proceeding to Steps 4 and 5. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). For Steps 1 through 4, the claimant has the burden to show disability, but the Commissioner has the burden at Step 5 to "show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. If the Commissioner

---

[6]The Act provides an alternate definition of disability for individuals under the age of eighteen. *See* 42 U.S.C. § 1382c(a)(3)(C). This provision is inapplicable on the current facts.

carries that Step 5 burden, "the burden shifts back to the claimant to rebut th[e] finding" that he or she can perform other work that is available in the national economy. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

"Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton*, 209 F.3d at 452). "In applying the substantial evidence standard, the court scrutinizes the record to determine whether such evidence is present, but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461. The courts neither "try the questions *de novo*" nor substitute their "judgment for the Commissioner's, even if [they] believe the evidence weighs against the Commissioner's decision." *Masterson*, 309 F.3d at 272. The Commissioner resolves conflicts of evidence. *Sun*, 793 F.3d at 508.

### III. ANALYSIS

Claimant contends that, when determining his RFC, the ALJ failed to properly consider opinions of his treating physician, Federico Ilang-Ilang, M.D. While characterizing the issue as a failure to accord the opinions controlling weight, he also argues that the ALJ improperly weighed the opinions by failing to conduct the detailed analysis required by *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000) and 20 C.F.R. § 416.927.

When considering whether a claimant is disabled, the Commissioner considers the medical

evidence available, including medical opinions.[7] *See* 20 C.F.R. § 416.927(b) (effective Aug. 24, 2012, to Mar. 26, 2017). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (physicians who perform a single examination of the claimant), or non-examining sources (a physician who reviews only the claimant's medical record). *See generally* 20 C.F.R. § 416.902 (effective June 13, 2011, to Mar. 26, 2017). The Fifth Circuit has "long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Nevertheless, even opinions from a treating source are "far from conclusive," because ALJs have "the sole responsibility for determining the claimant's disability status." *Id.*; *accord Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

"After identifying relevant medical opinions of treating physicians, ALJs must determine whether any such opinion is entitled to controlling weight." *Bentley v. Colvin*, No. 3:13-CV-4238-P, 2015 WL 5836029, at *7 (N.D. Tex. Sept. 30, 2015) (citing 20 C.F.R. § 416.927(c)(2) and its Title II counterpart, § 404.1527(c)(2)). When identifying and considering relevant opinions, ALJs "must remember" that some medical records, such as medical source statements provided by a treating source, "may actually comprise separate medical opinions regarding diverse physical and mental

---

[7]As explained to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). The regulations, however, reserve some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulation. *Id.* § 416.927(d). Effective March 27, 2017, § 416.927 sets out a two-tiered approach for applying the regulation: "For claims filed (see § 416.325) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 416.920c apply." Regardless, the pertinent version for this appeal remains the one in effect when the ALJ issued his decision. *See Young v. Berryhill*, No. 16-20786, 2017 WL 2312859, at *2 n.3 (5th Cir. May 26, 2017) (per curiam).

functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *4 (S.S.A. July 2, 1996).

The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." 20 C.F.R. § 416.927(c)(1)-(6) (effective Aug. 24, 2012, to Mar. 26, 2017).[8] "When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with' other substantial evidence." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *3 (N.D. Tex. June 30, 2014) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)); *accord* 20 C.F.R. § 416.927(c)(2) (effective Aug. 24, 2012, to Mar. 26, 2017). Furthermore, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Newton*, 209 F.3d at 453.

In addition, "the ALJ may re-contact a treating physician or other medical source if there is insufficient evidence to determine whether the claimant is disabled." *Perry v. Colvin*, No. 3:13-CV-2252-P, 2015 WL 5458925, at *7 (N.D. Tex. Sept. 17, 2015); *accord Jones v. Colvin*, No. 4:13-CV-

---

[8]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c) (effective Aug. 24, 2012, to Mar. 26, 2017). Even with the recent regulatory amendments, these factors remain relevant for claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927(c) (effective Mar. 27, 2017). For claims filed on or after March 27, 2017, 20 C.F.R. § 416.920c provides details on how the administration considers and articulates medical opinions and prior administrative medical findings.

818-A, 2015 WL 631670, at *7 (N.D. Tex. Feb. 13, 2015) (accepting recommendation of Mag. J. which recognized that, effective March 26, 2012, this new regulation replaced the former mandatory requirement of § 404.1512(e) applied in *Newton*); 20 C.F.R. § 416.920b(c)(1). Further, "if after weighing the evidence [the ALJ] cannot reach a conclusion about whether [the claimant is] disabled," § 416.920b(c) provides "various options, including re-contacting a treating physician or other medical source, to resolve an inconsistency or insufficiency of evidence." *Bentley*, 2015 WL 5836029, at *8 (citing 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (effective Mar. 26, 2012 to March 26, 2017)).

ALJs who find a treating source opinion not entitled to controlling weight must consider the six regulatory factors to properly assess the weight to give such opinions. *Newton*, 209 F.3d at 456. However, "*Newton* requires only that the ALJ 'consider' each of the [regulatory] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The [ALJ] need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, No. 4:08-CV-672-A, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (emphasis added); *accord Emery v. Astrue*, No. 7:07-CV-084-BD, 2008 WL 4279388, at *5 (N.D. Tex. Sept. 17, 2008); *Burk v. Astrue*, No. 3:07-CV-899-B, 2008 WL 4899232, at *4 (N.D. Tex. Nov. 12, 2008) (accepting recommendation of Mag. J.). *Newton*, furthermore, does not require the detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458. Likewise, the detailed analysis under *Newton* is not necessary when the ALJ has weighed the treating physician's opinion against opinions of other treating or examining physicians who "have specific medical bases for a contrary opinion." *Id.*

The ALJ, as fact-finder, "has the sole responsibility for weighing evidence and may choose

8

whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). ALJs have considerable discretion in assigning weight to medical opinions and may reject the opinion of a physician when the evidence supports a contrary conclusion. *Newton*, 209 F.3d at 455-56. Additionally, for good cause shown, an ALJ may assign little or no weight to an opinion from a treating source. *Id.* "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

Medical records prior to Claimant's alleged amended onset of disability show a history of hypertension, back pain, diabetic ketoacidosis, diabetes mellitus, traumatic arm pain, PTSD, anxiety, and obsessive compulsive disorder ("OCD"). *See* R. 216-19, 226-33, 270, 272-78, 280, 285, 300, 336-40, 343-44, 402, 405, 408-09, 416, 418-19, 427, 440-41, 452-53, 455, 457-58, 477-80, 486-87. The month before his amended onset of disability State Agency Medical Consultant Robert Gilliland, M.D., assessed Claimant's mental capacity for the period March 6, 2012, through August 13, 2012. *See* R. 280.

Dr. Gilliland completed a Psychiatric Review Technique on August 13, 2012, wherein he stated that an RFC assessment was necessary and a coexisting non-mental impairment required a referral to another medical speciality. *Id.* Dr. Gilliland found anxiety-based disorders (PTSD and OCD), personality disorders, and a substance abuse disorder (reportedly in remission) that do not precisely satisfy diagnostic criteria but moderately limit Claimant in all areas of mental functioning. R. 280, 285, 287-88, 290. In a Mental Residual Functional Capacity Assessment, Dr. Gilliland found Claimant (1) markedly limited in his abilities to understand, remember, and carry out detailed

9

instructions; (2) moderately limited in his abilities to maintain attention and concentration for extended periods, work with others without being distracted, complete a normal workday without interruptions from psychological symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with general public, accept instructions and respond appropriately to criticism from supervisors, and to respond to changes in the work setting; and (3) not significantly limited in all other listed abilities. *See* R. 294-95. From a mental functional capacity standpoint, Dr. Gilliland assessed that Claimant would be limited to making simple decisions and understanding, remembering, and carrying out simple instructions only. R. 296.

The day before his alleged onset of disability, July 3, 2013, Claimant visited his treating physician, Dr. Ilang-Ilang for a diabetic follow-up in which he complained of night sweats, body aches, fever, nausea, and being very emotional upset for fourteen days prior to the visit. *See* R. 490. He rated his pain as "10." *Id.* Dr. Ilang-Ilang prescribed medication for pain and PTSD; made several diagnoses, including diabetes, arthritis, PTSD, and OCD; and instructed Claimant about weight loss and exercise. R. 491.

That same day, Dr. Ilang-Ilang completed a Residual Functional Capacity Questionnaire ("RFCQ")[9] in which he stated various opinions regarding Claimant's diagnoses, prognosis, symptoms, and limitations and restrictions resulting from his symptoms and impairments. *See* R. 514-16 (Ex. 17F of administrative record). He opined that Claimant (1) would experience symptoms severe enough to frequently interfere with attention and concentration required to perform simple work-

---

[9]One entry in the administrative record states that the records (Ex. 17F) are from Dr. Pankaj Patel. *See* R. 513. However, Dr. Ilang-Ilang signed the questionnaire in two places, *see* R. 515-16, and there is no reason to believe that a different physician completed it. Although the ALJ likewise attributes the questionnaire to Dr. Patel, *see* R. 20, there is no basis to consider that as any more than reliance on the statement within the administrative record that the records were sent from Dr. Patel.

related tasks; (2) would need to recline or lie down in excess of typical morning, lunch, and afternoon breaks; (3) could walk three blocks before needing to rest or experiencing significant pain; (4) could sit forty-five minutes and stand/walk for twenty minutes at one time; (5) could sit for three hours and stand/walk for two hours in an eight-hour work day and would need a job that permits alternating positions at will; (6) would need to take four to five unscheduled breaks each workday that last thirty to forty minutes; (7) was limited to occasionally lifting and carrying ten pounds or less; and (8) was limited in use of hands, fingers, and arms. R. 514-15. Dr. Ilang-Ilang identified dizziness, drowsiness, and nausea as medicinal side effects that may impact Claimant's capacity for work. R. 514. He also estimated that Claimant would have more than four absences a month from his impairments and treatments. R. 515.

On July 4, 2013, Midland Memorial Hospital admitted Claimant for the flu. R. 498. Claimant's chief complaints were cough and body aches and he reported that the symptoms had started two weeks earlier. R. 500. Examination showed Claimant to be "[c]hronically ill-appearing" and "in moderate apparent distress from malaise." R. 502. A chest x-ray revealed a "[n]ewly developed bibasilar pulmonary nodules" that would be considered "metastatic disease until proven otherwise." R. 505. A CT scan taken the next day revealed evidence of metastatic disease to the lungs, new moderate splenomegaly, and small left pleural effusion and bibasilar atelectasis. R. 506. Following the CT scan, a hospital physician diagnosed lung mass and discharged Claimant to home. *Id.*

On August 5, 2013, Claimant returned to Dr. Ilang-Ilang for follow-up on his hypertension, diabetes, lungs, and cough. R. 558. A review of his systems revealed he was positive for chills, malaise, fatigue, and possibly fever. *Id.* The doctor diagnosed diabetes, pneumonia, sarcoma, and cancer. R. 559. His treatment plan included continuing on medications and bed rest. *Id.* Later that

month, Claimant began treatment with Dr. Patel. *See* R. 510-12.[10] Claimant reported that he was unable to lie on his left side and his bones were hurting in his hip, femur, and back. R. 511. At Dr. Patel's request, Claimant underwent a PET/CT scan on August 8, 2013, that revealed defects consistent with "metastatic disease." *See* R. 522. Dr. Patel conducted pulmonary function testing on August 12, 2013, that revealed "mild Stage 1 chronic obstructive pulmonary disease" and significant emphysema. R. 540. Claimant underwent additional scans on August 14, 2013. R. 518. Based upon the scans, Dr. Patel diagnosed sarcoidosis and started Claimant on prednisone on August 19, 2013. R. 510, 552.

Claimant visited Dr. Ilang-Ilang on September 5, 2013, for follow-up on his various impairments. *See* R. 552. Dr. Ilang-Ilang stated that Claimant was "undergoing chromosomal test on the sarcoma" and identified the sarcoma as Stage 4. R. 554. He refilled Claimant's medications. R. 552, 554. Later that month, Claimant returned to Dr. Patel with complaints of calf pain. R. 567. Two months later, Claimant visited Dr. Ilang-Ilang for further follow-up and the doctor removed bed rest from his instructions to Claimant. *See* R. 570-71.

The ALJ specifically considered the July 2013 RFCQ (Exhibit 17) and the opinions stated therein. *See* R. 20. He noted that the physician "opined that the claimant is unable to perform even sedentary work and would miss work more than four times a month as a result of his impairments." *Id.* The ALJ accorded "little weight" to this opinion because he found the opinion "quite conclusory," provided "very little explanation of the evidence relied on in forming that opinion," "incon-

---

[10]These medical records are often illegible and the only true indication that they are from Dr. Patel is the cover letter requesting the records. *See* R. 509-12. Nothing suggests that these are not records of Dr. Patel and the Commissioner expresses no disagreement with attributing them to him. Accordingly, the Court proceeds as though the records are from Dr. Patel.

12

sistent with the claimant's activities of daily living, which include driving and helping to care for his 13 month old child," and "inconsistent with the claimant's essentially normal physical examinations findings" previously set out by the ALJ. *Id.*

The ALJ interpreted Dr. Ilang-Ilang's opinions as foreclosing sedentary work and the doctor indeed set out specific functional limitations that would preclude such work generally. *See* Titles II & XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83–10 (PPS–101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983) (providing guidance as to the various exertional levels). Had Dr. Ilang-Ilang specifically concluded that Claimant could not work at a sedentary level, such conclusion, of itself, would not qualify as a medical opinion. *See* Titles II & XVI: Med. Source Ops. on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374183, at *5 (S.S.A. July 2, 1996) (recognizing that use of phrases such as "sedentary work" to reflect "judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability"). While such a conclusion is not entitled to any special significance, his medical opinions, i.e., the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and other medical judgments as to the nature and severity of the claimant's impairments, *see* 20 C.F.R. § 416.927(a)(2) (effective Aug. 24, 2012, to Mar. 26, 2017); SSR 96-5P, 1996 WL 374183, at *2, that support such a legal conclusion may be entitled to special significance.

As a treating source, the medical opinions of Dr. Ilang-Ilang are entitled to controlling weight if well-supported as required by the regulations and not inconsistent with other substantial evidence. The ALJ did not accord the opinions controlling weight, but instead gave them "little weight." R. 20. At this point, there is no need to determine whether the ALJ erred in not giving the opinions

controlling weight because even if the Court were to find no error in that respect, such finding merely clears the first hurdle. Once the ALJ finds that a medical opinion of a treating source is not entitled to controlling weight, he or she must make the detailed analysis required by 20 C.F.R. § 416.927(c) unless there is reliable medical evidence from a treating or examining physician controverting the opinions of the treating source.

In this case, the ALJ did not recite the six factors, although he does note in conclusory fashion that he had "considered opinion evidence in accordance with the requirements of 20 CFR 416.927" and various social security rulings. *See* R. 17. An ALJ cannot substitute a general, conclusory statement for consideration of the six factors. Furthermore, the ALJ decision reflects little consideration of the factors overall. It thus appears that the ALJ procedurally erred by not more fully considering and weighing the opinions of Dr. Ilang-Ilang.

A procedural error does not require reversal and remand, however, unless the error affects the substantial rights of the claimant. *Snodgrass v. Colvin*, No. 3:11-CV-0219-P, 2013 WL 4223640, at *7 (N.D. Tex. Aug. 13, 2013) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). To warrant reversal, the error must "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 3:11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

On the record before the Court, the failure to conduct the detailed analysis is not harmless error. Dr. Ilang-Ilang provided the only reliable medical opinions of Claimant's physical abilities from a treating or examining source. Rather than properly weigh and consider those opinions in

accordance with the regulation and *Newton*, the ALJ discounted them as conclusory and inconsistent with activities of daily living, including caring for an infant,[11] and "essentially normal physical examination findings." *See* R. 20. In addition, he noted that the opinions of Dr. Gilliland support the his RFC determination and gave great weight to opinions that Claimant is moderately limited in concentration, persistence, and pace. R. 21. However, Dr. Gilliland stated no opinion regarding Claimant's physical abilities – his opinions were instead limited to mental abilities. *See* R. 280-96. Based on Dr. Ilang-Ilang's medical opinions regarding Claimant's ability to sit, Claimant did not possess the functional ability for even sedentary work. *See* Titles II & XVI: Determining Capability to do Other Work – The Medical-Vocational Rules of Appendix 2, SSR 83-10 (PPS–101), 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983).

In making his RFC assessment, the ALJ rejected specific medical opinions of Dr. Ilang-Ilang. Rejecting medical opinions when there is no contrary opinion from a treating or examining source requires usurping the physicians' role. *See Newton v. Apfel*, 209 F.3d 448, 453-58 (5th Cir. 2000). "That is neither the role of the ALJ nor this Court. Neither the courts nor ALJs may rely on their own medical opinions as to the limitations presented by a claimant's impairments." *Howeth v. Colvin*, No. 3:12-CV-0979-P, 2014 WL 696471, at *11 (N.D. Tex. Feb. 24, 2014) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (per curiam) (reversing denial of benefits when the ALJ impermissibly relied on his own medical opinions as to limitations presented by the claimant's

---

[11]The Commissioner concedes that the ALJ erroneously notes that the baby was thirteen months old instead of thirteen pounds, but characterizes the erroneous notation as a harmless typographical error because the ALJ had previously noted the weight as thirteen pounds. Def.'s Resp. Br. at 6-7. Claimant testified that his "four-month old boy" weighs "about 13 pounds." R. 40. When discussing Claimant's testimony as to his limitations, the ALJ noted that Claimant "can lift his 13-pound baby while seated." R. 18. That statement is much different than caring for a "13 month old child, which can be quite demanding both physically and emotionally," as characterized by the ALJ. *See* R. 20. While the latter statement appears to be more than a simple typographical error, the Court need not dwell on this error to find reversible error.

impairments)). It is reversible error for ALJs to substitute their own medical opinions for those of a treating physician. *Evans v. Colvin*, No. 1:14-CV-202-BL, 2015 WL 9685552, at *3 (N.D. Tex. Dec. 8, 2015) (recommendation of Mag. J.), *adopted by* 2016 WL 112645 (N.D. Tex. Jan. 8, 2016).

Like *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See* 209 F.3d at 458. While the ALJ relied on medical opinions of a state agency consultant, such opinions do not constitute first-hand medical evidence, because it appears that they were formed on a second-hand basis from a review of then existing medical records. Furthermore, the consultant only addressed Claimant's mental abilities and his opinions were for a period ending before the amended onset date of disability. Like *Newton*, this is not "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.* Instead, like *Newton*, the ALJ in this case rejected medical opinions of a treating physician without a contrary opinion by an examining or treating physician. *See id.* By doing so, the ALJ erred. Furthermore, to the extent the ALJ perceived a need for an additional or updated medical opinion, he took no steps to secure such opinion from any medical expert. The medical record before the ALJ provides no basis for rejecting the limitations noted by Claimant's treating physician.

The Commissioner in this case carried her Step 5 burden through testimony of a VE who identified sedentary jobs based upon the RFC assessed by the ALJ. Had the ALJ properly considered the medical opinions of Dr. Ilang-Ilang, there is a realistic possibility that his RFC assessment would have changed. The opinions of Dr. Ilang-Ilang support limitations greater than the RFC assessment. A change in the limitations within the questioning to the VE would cast doubt upon the existence

of substantial evidence to support the ALJ's decision because to constitute substantial evidence to support a Step 5 finding of non-disability, testimony from a VE must include all limitations warranted by the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002); *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). Accordingly, to rely on the VE testimony to satisfy the Step 5 burden, the ALJ's hypothetical questioning would need to include all limitations warranted by the evidence.

The Court finds that the ALJ improperly considered and weighed opinions of Dr. Ilang-Ilang. There is no good cause to discount the weight of those opinions relative to any other expert. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 416.927. Had he conducted that analysis and properly considered and weighed the opinions of the treating physician there a realistic possibility that he would have altered the hypothetical to the VE to include greater limitations than assessed in the current RFC. Had the ALJ accepted Dr. Ilang-Ilang's opinions about Claimant's exertional limitations, no full-time jobs would exist that he could perform according to VE testimony in this case. *See* R. 44. Alternatively, there is a realistic possibility that the ALJ would have utilized procedures in 20 C.F.R. § 416.920b(c)(1) to secure additional evidence. The changes resulting from either alternative "would cast into doubt the existence of substantial evidence to support the ALJ's current decision." *Perry v. Colvin*, No. 3:13-CV-2252-P, 2015 WL 5458925, at *11 (N.D. Tex. Sept. 17, 2015). Consequently, the procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Claimant's substantial rights have been affected by the consideration and weight accorded to the opinions of the treating physician by the ALJ. This procedural error is not harmless and warrants remand.

Relying on *Foster v. Astrue*, 410 F. App'x 831 (5th Cir. 2011) (per curiam), the Com-

missioner would have the Court disregard the opinions of Dr. Ilang-Ilang for "good cause" because the opinions are contained within a check-the-box format. *See* Def.'s Resp. Br. at 6. Although such "format typifies 'brief or conclusory' testimony," that observation alone did not justify declining to give "considerable weight" to the treating physician in *Foster*. *See Foster*, 410 F. App'x at 833 (noting three reasons for not giving considerable weight to the opinions expressed in the questionnaire). Furthermore, to discount medical opinions of a treating source for good cause requires a contrary opinion of another expert. *See Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). *Foster* does not stand for the broad proposition asserted by the Commissioner.

## IV. CONCLUSION

For the foregoing reasons and pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Court reverses the decision of the Commissioner and remands this case for further administrative proceedings consistent with this order.

**SO ORDERED this 6 day of September, 2017.**

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**